UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NUMBER 1:24-cv-82-GNS-LLK

TARA W.                                                                                           PLAINTIFF

v.

FRANK BISIGNANO,
Commissioner of Social Security                                                                   DEFENDANT

REPORT AND RECOMMENDATION

On June 17, 2024, Plaintiff filed a Complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the Final Decision of the Commissioner denying her claims for Disability Insurance (DIB) and Supplemental Security Income (SSI) Benefits under Titles II and XVI of the Social Security Act. [DN 1]. Plaintiff's Brief is located at DN 9, the Commissioner's responsive Fact and Law Summary is at DN 11, and the Plaintiff's Reply is at DN 12. The District Court referred this matter to the United States Magistrate Judge for preparation of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) by text order dated July 3, 2024.

After examining the administrative record, the arguments of the parties, and the applicable authorities, the undersigned is of the opinion that the ALJ's Decision is flawed in its failure to articulate the ALJ's evaluation and analysis of the physical restrictions assessed by Plaintiff's primary care physician, Dr. Jerome A. Dixon, and for failing to articulate the ALJ's evaluation and analysis of the mental restrictions assessed by consultative examiner, Psychologist Julie Joseph-Fox, M.A, as required by 20 C.F.R. §§ 404.1520c and 416.920c.

**Administrative History**. Plaintiff filed a Title II DIB application for a period of disability and disability insurance benefits on October 21, 2021. She later filed a Title XVI SSI application

for supplemental security income benefits on April 30, 2022. In each application, Plaintiff alleged disability beginning February 6, 2021, when she was 30 years old as a result of "blind or low vision, past back surgery rods, screws, and plates bone graph, ADHD, lumpectomy, anxiety, depression, scoliosis, migraines and kidney stones." [DN 8] at 67. Her claims were denied initially on August 3, 2022, [DN 8] at 66, and upon reconsideration on October 21, 2022, [DN 8] at 82. Plaintiff requested a hearing before an ALJ, which was granted. Plaintiff agreed to a telephonic hearing, with all participants attending the March 21, 2023, hearing before ALJ Robert B. Bowling by telephone. Plaintiff was represented by Carl W. Groves, Jr., a non-attorney representative. Also attending the telephonic hearing was impartial vocational expert, Debra Civils. On June 5, 2023, the ALJ issued an unfavorable Decision finding that Plaintiff was not disabled. [DN 8] at 21-34.

**The ALJ's Decision**. The ALJ's Decision denying Plaintiff's claims for DIB and SSI benefits was based on the five-step sequential evaluation process which applies in all Social Security disability cases.[1] At the first step, the ALJ found that Plaintiff has not engaged in substantial gainful activity since February 6, 2021, the alleged onset date. [DN 8] at 23. At the second step, the ALJ determined that Plaintiff has the following severe impairments: degenerative disc disease; congenital scoliosis; and amblyopia with visual disturbance. [DN 8] at 24. At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in Appendix 1. [DN 8] at 27.

As in any case that proceeds beyond Step 3, the ALJ determined Plaintiff's residual functional capacity (RFC), which is defined as "the most you can still do despite your limitations." 20 C.F.R. §§ 404.1545(a), 404.1546(c), 416.945(a), 416.946(c). In making an RFC determination,

---

[1] The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2026.

2

the ALJ considers the record in its entirety. 20 C.F.R. §§404.1545(a)(3), 416.945(a)(3). The ALJ found that, notwithstanding her impairments, Plaintiff can perform a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she can occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds, sit for six hours in an eight-hour workday with normal breaks, and stand or walk for six hours in an eight-hour workday with normal breaks. She can push or pull equal to the lift and carry amounts with the bilateral upper and lower extremities. The claimant can occasionally climb ladders, ropes, or scaffolds, and can frequently climb ramps and stairs. She can occasionally stoop, and can frequently crawl. The claimant can only occasionally be exposed to extreme cold, humidity, vibration, and to hazards such as the use of moving machinery and to unprotected heights. She should not work where acute peripheral vision on the right side is required but the claimant is able to avoid normal workplaces hazards.

[DN 8] at 27.

At the Fourth Step, the ALJ found that Plaintiff is unable to perform any past relevant work, 20 CFR 404.1565 and 416.965. At the Fifth Step, the ALJ considered Plaintiff's age, education, work experience, residual functional capacity, and the testimony from the vocational expert in finding that there are jobs that exist in significant numbers in the national economy that Plaintiff is capable of performing. Accordingly, the ALJ concluded that Plaintiff has not been under a disability from February 6, 2021, through the date of the Decision.

Plaintiff timely requested review of the ALJ's Decision by the Appeals Council, and on April 29, 2024, the Appeals Council denied Plaintiff's request for review. As a result of the Appeals Council denial, the ALJ's Decision became the final decision of the Commissioner and subject to judicial review in this Court. 42 U.S.C. §§ 405(g) and 1383(c); 20 C.F.R. § 422.210(a).

**Standard of Review**. The task in reviewing the ALJ's findings is limited to determining whether they are supported by substantial evidence and made pursuant to proper legal standards. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is "more

than a scintilla of evidence but less than a preponderance." *McGlothin v. Comm'r of Soc. Sec.*, 299 F.App'x 516, 522 (6th Cir. 2008). The Court may not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 296 (6th Cir. 1994).

The substantial evidence standard presupposes that there is a "zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). A reviewing court decides only whether substantial evidence supports the decision. *Id*. If it does, the court affirms the decision even in the face of substantial evidence supporting the opposite conclusion. *Id*.

**Plaintiff's Two Arguments**. The first of Plaintiff's arguments pertains to the ALJ's findings at step four of the sequential evaluation process, claiming that the ALJ erred in his weighing of the medical opinion of Jerome Dixon, D.O., Plaintiff's treating source with respect to her physical impairments. That is, Plaintiff contends that the ALJ failed to adequately explain why he rejected the physical restrictions assessed by Dr. Dixon. Plaintiff's second argument faults the ALJ's weighing of the mental restrictions assessed by consultative examiner Psychologist Julie Joseph-Fox, M.A.

<u>Plaintiff's first argument is persuasive</u>.

Plaintiff's takes issue with the ALJ's evaluation and explanation of his analysis of treating source Jerome A. Dixon:

> Plaintiff takes exception with the ALJ's finding number five, which addresses step four in the sequential evaluation process, and asserts that the ALJ erred by failing to properly evaluate and explain his analysis of the physical restrictions assessed by Jerome A. Dixon, D.O., Plaintiff's treating source.

[DN 9] at 9.

According to Plaintiff, Dr. Dixon's treatment records cover a period of approximately one and a half years, from December 16, 2020, to May 9, 2022. *Id*. at 4.[2] On December 14, 2021, about a year into her treatment with Dr. Dixon, Plaintiff underwent a lumbar discectomy and a lumbar fusion by Dr. Rolando Puno, [DN 8] at 351, for "collapse and spondylosis at L4-5 and L5-S1 with radiculopathy." *Id*. at 372. The surgery was necessitated by back pain resulting from scoliosis. *Id*. at 406. The medical records following the back surgery are mixed with regard to objective medical evidence/findings of improvement versus continuing limitations in range of motion, continued pain and numbness.

About eleven months following the back surgery, Plaintiff's primary care physician, Dr. Dixon, completed a Medical Source Statement for Social Security Disability Claim [DN 8] at 772-73.[3] He lists her diagnoses as juvenile idiopathic scoliosis of thoracic and thoracic-lumbar region; chronic migraine headaches; chronic tension-type headaches, fusion of the thoracic-lumbar spine with chronic thoracic lumbar spine and ADHD. *Id*. In addition, he notes that she has vision in only one eye, as she is blind in the right eye. *Id*. In this circle-answer form, Dr. Dixon indicates that Plaintiff can lift five pounds occasionally, but can lift nothing frequently; she cannot stand or walk in a work day; she can stand/walk for only ten minutes at a time; she can sit for only 60 total minutes in a workday for fifteen minutes at a time; she can never bend, stoop, or balance; work around dangerous equipment; or tolerate cold, dust smoke or fumes exposure. *Id*.

---

[2] The Administrative Record contains records from Dr. Dixon's office well past May 9, 2022, including: July 9 and 12, 2022, records and radiology reports following an incident in which a couch was dropped on her foot/ankle [DN 8] at 706, 716, 718; September 8, 2022, records wherein she expressed frustration with her back situation and inability to work to make money [DN 8] at 704; September 29, 2022, records that indicate back pain at a 5 of 10 and no acute distress; October 19, 2022, records to follow up on her ADHD medication, depression, need for a repeat drug screen, and referral for a mammogram.

[3] The Commissioner's point is well-taken, that the ALJ was not required to consider Dr. Dixon's statement that Plaintiff is "unable to work" because it is not a medical opinion, but instead is a statement on an issue "reserved to the Commissioner." 20 C.F.R. §§ 404.1520b(c)(3)(i), 416.920b(c)(3)(i). Because Dr. Dixon's statement that Plaintiff is unable to work is "inherently neither valuable nor persuasive to the issue of whether [she is] disabled," the ALJ was not required to "provide any analysis about how [he] considered such evidence in [his] determination or decision."

Dr. Dixon further indicated by circling "occasionally" that Plaintiff is limited to only occasional: fine and gross manipulation with either hand; raising of either arm over shoulder level; operation of a motor vehicle; and tolerate heat or noise. *Id*. The form indicates that Plaintiff would have to elevate her legs frequently during an eight-hour workday, and that she suffers from moderate to severe pain that will get worse with further surgery. *Id*. Dr. Dixon further indicated that Plaintiff's pain would interfere with her attention and concentration constantly, and that she would miss work four or more days a month. *Id*. He opined that her medications would cause mild disturbance in her ability to perform normal, routine, work-like functions, but that her fatigue would be moderate to severe. *Id*. He indicated that these limitations/symptoms have been in effect since June of 2021, noting:

> Pt. is presently unable to work at her age because of her severe back pain from thoracic scoliosis …. She has had one surgery of thoracic lumbar spine and needs a second surgery. She is 100% functionally impaired and will have to be reevaluated after her next surgery to see if she can work after recovering from her surgery.

[DN 8] at 773.

If Dr. Dixon's opinions regarding Plaintiff's functional limitations were to be given controlling weight, Plaintiff would be deemed disabled.

The ALJ's Decision denying Plaintiff's claims for DIB and SSI set forth several paragraphs of detailed discussion of the medical evidence, and says of the medical opinions and prior administrative medical findings,

> … the undersigned will not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical findings or medical opinions, including those from the claimant's medical providers. Rather, the undersigned fully considered the medical opinions and prior administrative medical findings in this case and evaluated them based on the longitudinal evidence of record.

ALJ Decision, [DN 8] at 29.

The Decision proceeds to summarize the findings of the State Agency medical consultants at both the initial and reconsideration levels, finding them to be "persuasive" when additional vision limitations are added to accommodate Plaintiff's right eye blindness. ALJ Decision, [DN 8] at 30. The ALJ next summarizes the findings of the November 2021 consultative physical examiner and finds them "not persuasive," noting that the examination occurred before Plaintiff's back surgery, that its findings were vague and undefined, and it provided little insight into Plaintiff's function-by-function abilities. *Id*.

The ALJ's Decision next addresses the opinions expressed by Plaintiff's treating primary care physician, Dr. Dixon in the Medical Source Statement for Social Security Disability Claim [DN 8] at 772-73, and states these reasons for rejecting his disabling opinions:

> This assessment is not supported by the evidence of record, including Dr. Dixon's own treatment notes. Specifically, on the date that he completed the opinion form, treatment notes document decreased range of motion with chronic pain as well tenderness in her back (Ex 15F p.4). Other treatment records from 2022 document similar findings (Ex 15F). While limitations are warranted due to her history of back pain, ongoing symptoms, and evidence of possible future surgeries, such findings do not support the significant limitations identified in the form (Ex 11F). Likewise, this assessment is not consistent with the longitudinal record, which does not indicate any more significant treatment beyond routine follow-up visits for her back pain, nor any emergency department visits in connection with significantly elevated or worsening back pain. There is some indication that she will require additional operations; however, there is little indication that she is altogether precluded from work activity. Therefore, this assessment is not considered persuasive.

ALJ Decision, [DN 8] at 30-31.

As noted above, the ALJ's Decision assigned Plaintiff an RFC for a limited range of light work that included postural, environmental and workplace hazard limitations to accommodate her degenerative back and limited vision conditions. And as Plaintiff's brief notes, an RFC assessment must identify a claimant's functional limitations and assess their work-related abilities on a function-by-function basis. Social Security Ruling 96-8p. Dr. Dixon's Medical Source Statement

7

for Social Security Disability Claim identified functional limitations in excess of those identified in the ALJ's RFC findings. Plaintiff contends that the ALJ not only failed to articulate why he rejected Dr. Dixon's physical restrictions, the mere two sentences he provided actually *support* Dr. Dixon's opinion. [DN 9] at 11. The Commissioner takes the opposite position, pointing out other evidence contained in the ALJ's Decision and in the administrative record that could be used to support the ALJ's determination. [DN 11] at 4.

**Treating Physician Rule**. Because Plaintiff filed her DIB and SSI claims on October 21, 2021, the new rules for weighing medical opinions apply. See 20 C.F.R. §§ 404.1520c, 416.920c ("For claims filed … on or after March 27, 2017, the rules in this section apply.") Under the old regulations for claims filed prior to March 27, 2017, the weight afforded a medical opinion generally depended upon the medical source that offered it. There were three types of acceptable medical sources in the "physician hierarchy" of the prior regulations: non-examining sources; examining but non-treating sources; and treating sources. 20 C.F.R. §§ 404.1527, 416.927. Under the old system, a treating physician's opinion was given controlling weight if it was "well-supported by medically acceptable clinical and laboratory techniques" and not inconsistent with the other substantial evidence in the record. If the treating physician's opinion could not be given controlling weight, the ALJ was required to provide "good reasons" for discounting the weight given to a treating source opinion. The rationale for the "good reasons" requirement was that it ensured that the ALJ applied the treating physician rule and permitted meaningful review of the ALJ's application of the rule by the reviewing court. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2019).

**Supportability/Consistency Analysis**. Under the new regulations that apply to this case, 20 C.F.R. §§ 404.1520c and 416.920c, an ALJ will no longer "defer or give any specific

evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [a claimant's] medical sources." 404.1520c(a); 416.920c(a). Instead, the ALJ must "evaluate the persuasiveness of [the] medical opinions and prior administrative medical findings" using five factors, including the (1) supportability and (2) consistency of the opinions or findings, the medical source's (3) relationship with the claimant and (4) specialization, as well as (5) "other factors" such as the "medical source's familiarity with the other evidence in a claim" and their "understanding of [the SSA's] disability program's policies and evidentiary requirements." *Id.* §§ 404.1520c(a), (c); 416.920c(a), (c). Of these five factors, "[t]he most important ... are supportability and consistency." *Id.* The supportability factor states that, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be." *Id.* §§ 404.1520c(c)(1); 416.920c(c)(1). The consistency factor states that, "[t]he more consistent a medical opinion(s) ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be." *Id.* §§ 404.1520c(c)(2); 416.920c(c)(2).

For these two factors, the ALJ is required to "articulate how [they] considered the medical opinions and prior administrative medical findings" and specifically "explain how [they] considered the supportability and consistency factors" in "determin[ing] how persuasive [they] find a medical source's medical opinions or administrative medical findings to be." *Id.* This "mandatory articulation requirement" has been said to "serve[ ] the same purposes as the good reasons requirement of the treating physician rule" because "[b]y requiring ALJs to articulate their analysis of the most important factors to consider ... the requirement permits meaningful judicial review" and "ensures that claimants will receive an explanation of why the ALJ found each

9

medical opinion, including those of their treating physician, to be persuasive, partially persuasive, or not persuasive." *Lorraine R. v. Comm'r of Soc Sec. Admin.*, No. 3:20-cv-00396, 2022 WL 4232839, *4–*5 (S.D. Ohio Sept. 14, 2022).

Magistrate Judge Lindsay in this district has noted that "[d]istrict courts applying the new regulations both within this circuit and throughout the country consistently apply the articulation requirement literally." *Gavre v. Comm'r of Soc. Sec.*, No. 3:20-CV-00551-DJH-CHL, 2022 WL 1134293, at *4 (W.D. Ky. Jan. 3, 2022), Report and Recommendation adopted, No. 3:20-CV-551-DJH-CHL, 2022 WL 798035 (W.D. Ky. Mar. 15, 2022). The new regulations require the ALJ to "provide a coherent explanation of [their] reasoning," *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021), and "clearly explain [their] consideration of the opinion and identify the evidence supporting [their] conclusions," *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020). In other words, the ALJ must "build an accurate and logical bridge between the evidence and [the ALJ's] conclusion." *Todd v. Comm'r of Soc. Sec.*, No. 3:20-cv-1374, 2021 WL 2535580, at *6 (N.D. Ohio June 3, 2021) (quoting *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011)). The new regulations establish a minimum level of articulation; an "ALJ's failure … to meet these minimum levels of articulation frustrates [the] court's ability to determine whether [a claimant's] disability determination was supported by substantial evidence." *Vaughn v. Comm'r of Soc. Sec.*, No. 20-1119, 2021 WL 3056108, at *11 (W.D. Tenn. July 20, 2021).

In the case of *Hardy v. Comm'r of Soc. Sec.*, 554 F.Supp.3d 900 (E. D. Mich. 2002), the court found that the ALJ did not meet the articulation requirement by including an "extensive summarization of the record" elsewhere in the Decision, nor did the ALJ's citation to specific medical source notes that contradicted the treating source assessments. In the present case, the

ALJ's two citations to the medical evidence intended to discredit Dr. Dixon's assessment as not supported by the evidence of record or Dr. Dixon's own treatment notes, were stated as follows: "Specifically, on the date that he completed the opinion form, treatment notes document decreased range of motion with chronic pain as well as tenderness in her back (Ex 15F p. 4). Other treatment records from 2022 document similar findings."

The meaning of those two sentences read together offers no support for the proposition that Dr. Dixon's assessment is flawed; in fact, they accomplish the opposite, by indicating that Dr. Dixon's November 21, 2022, assessment *is* supported by his other treatment records from 2022. The Commissioner does an excellent job of citing to numerous medical entries contained in the administrative record, Plaintiff's hearing testimony, and evidence described elsewhere in the Decision that could furnish the rationale missing from the ALJ's articulation paragraph addressing the unsupportability of Dr. Dixon's assessment. But a *post hoc* rationalization of how the ALJ could have applied the factors does not cure the deficiency, *Miles v. Comm'r of Soc. Sec.*, 2021 WL 4905438 (S.D. Ohio, Oct. 21, 2021).

The plain language of the new regulations is clear; supportability and consistency are the two most important factors in determining how persuasive a medical source's medical opinions are, and "[t]herefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions … in your … decision." 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2). "Even if the Court 'were to agree that substantial evidence supports the ALJ's weighing of … [the doctor's] opinions, substantial evidence alone does not excuse non-compliance with [the regulations] as harmless error.'" *Hardy,* 554 F.Supp.3d at 908 (citing *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 410 (6th Cir. 2009)). "As courts have explained, '[t]he requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases,' particularly

11

in situations where a claimant knows that [her] physician has deemed [her] disabled and therefore 'might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'" *Id.*, citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). *Hardy* concludes by observing that,

> …[b]oth *Blakley* and *Wilson* addressed the application of the treating physician rule. But their reasoning applies with equal force to the new regulations, which require explanations for determinations that a medical opinion is unpersuasive. Because of the greater latitude afforded ALJs under the new regulations, the importance of cogent explanations is perhaps even more important …. Faithful adherence to the 'articulation' requirement of the new regulations is vital to maintaining the guarantee of the rule of law.

*Id.* at 908.

The ALJ's rejection of Dr. Dixon's assessment does not comply with the articulation requirements under 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2).

<u>Plaintiff's second argument is persuasive</u>.

Plaintiff's second argument challenges the ALJ's step four mental RFC determination, alleging that the ALJ committed legal error:

> Plaintiff takes exception with the ALJ's finding number five, which addresses step four in the sequential evaluation process, and asserts that the mental RFC determination is not supported by substantial evidence and the ALJ committed legal error by failing to properly evaluate and explain his analysis of the restrictions assessed by Psychologist Julie Joseph-Fox, M.A., who performed the agency's consultative mental evaluation.

[DN 9] at 13.

**Evaluating mental impairments**. In cases where a claimant has mental impairments, the ALJ must determine the degree to which they significantly limit a claimant's ability to do one or more basic work activities. This analysis is based upon the degree of functional limitation in four broad functional areas that are known as the "paragraph B" criteria. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3); 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00E. They are: understand, remember, or

12

apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. *Id*. The four areas of mental functioning are evaluated on the following five-point rating scale: none, mild, moderate, marked and extreme. 20 C.F.R. §§ 404.1520a(c)(4) 416.920a(c)(4). To satisfy the paragraph B criteria, a claimant's mental disorder must result in an extreme limitation in one, or marked limitation in two of the four areas of mental functioning. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00E. Certified Clinical Psychologist Julie Joseph-Fox, M.A. performed a consultative examination of Plaintiff on January 25, 2022. Ms. Joseph-Fox found Plaintiff mildly impaired in her ability to perform simple, repetitive tasks and to engage appropriately; moderately impaired in tolerance for the activities required during the evaluation; and mildly impaired in her ability to relate to others including siblings, workers, or supervisors. [DN 8] at 974-75.

In his Step 2 analysis, the ALJ summarized the findings of consultative examiner Ms. Joseph-Fox as "opin[ing] the following: mild impairment in her ability to demonstrate adequate attention to perform simple, repetitive tasks and to engage appropriately; moderate impairment as to her tolerance for activities required during the evaluation; and mild impairment in her ability to relate to others, including siblings, workers, or supervisors (Ex 18F)." The ALJ then gave the following reasons for deeming Ms. Joseph-Fox's findings to be less persuasive:

> This was partially supported by the claimant's subjective reports made during the examination, including her activities of daily living and issues with respect to concentration, which she attributed to her ADHD (EX 18F). As for the moderate impairment with respect to her tolerance of the activities required during the evaluation, this appears to be supported by her irritation when encouraged to answer some items; however, this is not consistent with the longitudinal record, which demonstrates little issue with the claimant's ability to handle her activities of daily living (Ex. 6E; 17F; 18F). Moreover, as previously noted, even in the absence of routine mental health treatment beyond medications, clinical findings were generally unremarkable during treatment visits without indication of irritation observed during other medical visits (Ex 6F; 15F p. 5). Otherwise, this assessment is considered less persuasive.

ALJ Decision, [DN 8] at 26.

The ALJ then found that Plaintiff's medically determinable mental impairments cause no more than "mild" limitation in any of the functional areas and concluded that they were nonsevere (20 C.F.R. 404.1520a(d)(1) and 416.920a(d)(1)). [DN 8] at 25. The reasons given by the ALJ for deeming Ms. Joseph-Fox's findings to be less persuasive are somewhat difficult to follow. For example, it is unclear to which area of mental function "This" refers; the moderate impairment assigned for the activities required in the evaluation is deemed to be *supported by* her irritation, but not *consistent with* the longitudinal record (i.e., Plaintiff's ability to handle her activities of daily living, her absence of routine mental health treatment beyond medications, generally unremarkable clinical findings during treatment visits without indications of irritation); and the use of "Otherwise" to begin the sentence finding Ms. Joseph-Fox's assessment less persuasive (which in every day parlance would indicate contrast, or what preceded this sentence was *more* persuasive).

This summary of the consultative psychological examination by Ms. Joseph-Fox at the Step 2 determination of severe/nonsevere impairments does not make it altogether clear which findings the ALJ accepted and which he rejected. And while the regulation terms "supported by" and "consistent with" are utilized in this paragraph, the findings are insufficiently stated so as to clearly explain the persuasiveness assigned to Ms. Joseph-Fox's findings. The case law indicates that it is the obligation of the ALJ "'in the first instance to show his or her work, *i.e.*, to explain in detail *how the factors actually were applied* in each case, to each medical source.'" *Miles,* 2021 WL 4905438 at *5, (citing *Hardy,* 554 F.Supp.3d at 909).

The ALJ's rejection of consultative psychological examiner Ms. Joseph-Fox's assessment does not comply with the articulation requirements of 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2).

14

Remand is appropriate where an ALJ's Decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007). The undersigned recommends remand under Sentence Four of 42 U.S.C. § 405(g) due to the problems discussed above.

## RECOMMENDATION

Because Plaintiff's arguments are persuasive and the ALJ's Decision does not comply with applicable law, the Magistrate Judge RECOMMENDS that the Court REMAND this matter to the Commissioner for a new decision and any further administrative proceedings deemed necessary and appropriate by the Commissioner.

## NOTICE

Under the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Fed. R. Civ. P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir.1984).

August 26, 2025

*[signature]*

**Lanny King, Magistrate Judge**
**United States District Court**